This morning is Rice v. Unpronounceable Name Trust. Mr. Sullivan, I suppose it's too much to ask you why your client has an unpronounceable name. Attorneys are responsible for many things, but their clients' names are not among them. No, that's true. LSREF is how we've been saying it. The three is not pronounced. Oh, sorry. LSREF3. Yes, it is pronounced. I'm sorry, Judge. To get started, James Sullivan on behalf of the appellants, and may it please the court and counsel, I won't pronounce the name any further. I'll just go by appellants. Just call it the trust. Yes, the trust. Morris Sapphire. A preliminary injunction is obviously an extraordinary remedy, especially in this instance when the granting of same allowed for sale of real estate. My principal question is, hasn't time passed this dispute by? The Kiowa property has been sold. The district judge said, I'm entering this preliminary injunction because this is how things seem to me now. But once we get more evidence, they may seem otherwise. Well, we've had three years. Why isn't the question now what the evidence shows rather than what it showed three years ago? Well, I think, Judge, to the mootness point, to establish mootness, there can't be any reasonable expectation that the alleged wrong will be repeated. Here we've got several additional pieces of collateral. Yeah, but why would the alleged wrong be repeated? You can stop a sale by posting a bond, right? There was no request for a ban on the sale. There apparently was no proposal to post a bond to stop the sale, stop everything in its tracks. I mean, that's what happens in litigation. And we've said over and over again that once a sale closes, you can't go back and relitigate it. And it's perfectly capable of being reviewed in the future if you post a bond. Possibly. I think there's been a very strained reading of the contracts at issue here that leaves open the potential that this will be repeated when another collateral sale occurs. Yeah, well, it'll be repeated just this way if the evidence is the same and you don't post a bond. But we don't know that the evidence will be the same, and we don't know that you'll decline to post a bond. So let's get to the nub of my question, which is why are we fighting in 2017 about what the evidence showed in 2014? That's a good question, Judge. We obviously spent a significant amount of time between the parties trying to resolve this matter. So it inevitably didn't work out, and it may work out. So what's happened in the district court in all these years? Basically some limited discovery with the issues being the same as they are today as they were in 2014. So not much has changed despite the length of time. Why should we even think about reversing a district court's preliminary injunction when the judge said this is just tentative. The thing to do is bring me more evidence. Why don't we just say the thing to do was take in more evidence? And that's with regards to the Keough was sailed, Judge, but there's also the flip side. Not a flip side, but another side of this appeal, which is the Georgia foreclosures, which should have occurred, but for the district court's failure to apply Georgia law. The deeds to secure debt were governed by Georgia law. Yet the district court chose to ignore Georgia law, which Georgia law requires that there be a posting of a bond or some security for the deed to secure debt before the sale can be stopped. The foreclosure sale in Georgia can be stopped. Furthermore, you had relief being sought on a preliminary injunction basis that wasn't even prayed for in the appellee's complaint. And then you had this issue of standing. You had a property owned by an entity that was not even a party to the case. You also had a deed to secure debt executed by a party that was not a plaintiff. I think there was a standing issue there that was completely ignored. Again, because the court hurried to a decision when one wasn't necessarily necessary. Explain to me what the standing issue is. Standing in federal courts has three components, injury causation and regressibility. Which one is missing? I don't know what the injury to the plaintiffs would have been should these foreclosures, at least as to the 9090 Barkson property. They wouldn't have been the injured party. The injured party would have been the one that owned the property and that signed the deed to secure the debt. They submit that they have a financial interest. Now, you may think that's wrong, but that's not a standing question. If there's a suit for breach of contract and the defense is you can't show damages, that's not a standing issue. That's part of the merits. But why is this a standing issue? Judge, I think, again, to obtain an injunction, you have to show that you're going to be irreparably harmed. Which is also not a standing issue. Understood. That's a question of proof. Understood. Beyond that, Judge, I really don't have much more to say here this morning. Okay. Thank you. Thank you, Mr. Sullivan. A lawyer with a name that's hard to pronounce, too. May it please the court. The issue this court must decide is whether Judge Chang abused his discretion by exceeding the bounds of permissible choice when confronted with the evidence adduced at the preliminary injunction hearing. Do you agree with Mr. Sullivan that essentially what's happened in the district court in the three years, the last three years, is nothing? I do. No additional evidence presented to the district judge? With regard to the value of the Kiowa property, I think that's correct. With regard to anything? I do not agree with that. Do not agree. Okay. So what additional evidence has been submitted to the district judge? Additional evidence has been submitted both to the judge and to the magistrate concerning the events that gave rise to the purported defaults, Your Honor, which we contend are meritless. Much of the litigation in the district court has surrounded that issue in particular, and that evidence has been presented. Could you be more concrete? I mean, are you referring to the shortfall in liquid assets issue? What issue are you referring to? We're referring to both the shortfall and the shortfall primarily. Okay. Your Honor, the appellants have a heavy burden, and we submit that they failed to carry that. Judge Chang's decision to grant preliminary injunctive relief was not an abuse of discretion and should be affirmed in all respects. The first issue, and as we've argued in the briefs, Your Honor, we too believe that the issue of the Kiowa sale is moot. It is gone. The property has been released. It's not coming back. We're not going to put that transaction back together, so we do submit that it is moot. To the extent that- And the other properties that are left, because counsel is saying, you know, that has some bearing on those properties and those upcoming transactions. So what's your view of that? My response is that they are not covered by the exception to the mootness doctrine. There are two elements that they would have to show to establish that, and that is, one, that the duration is too short to be fully litigated prior to its cessation, and then the second element is that there's a reasonable expectation that the same complaining party would be subject to that action again. And those are important points, Your Honor, because the issue really surrounding the Kiowa property, the issue was the reasonableness of the valuation, the reasonableness of the estimated fair market value. So that particular set of facts and circumstances we submit will never be addressed again in terms of repetition. We've got different properties. They're located in different parts of the country, and they have different values. The appellants have raised the issue that if they are stuck with this order, that the appellees have license to sell these properties at any price they wish. We think that is a simplistic reading of Judge Chang's order. We know in the years that have succeeded the order on November 18th that the appellees have not attempted any type of sale, any type of fire sale or selling the properties for a dollar as the appellees suggest that Judge Chang's order would let them do. So for those reasons, we don't believe that the capable of repetition yet evading review exception to the moodiness doctrine applies. Judge Chang's interpretation of the second forbearance agreement should be affirmed. The second forbearance agreement fundamentally restructured the relationship among the parties. His interpretation of that agreement we submit was logical, sensible, and reasonable. What Judge Chang did was give meaning to the pertinent provisions of Section 8.1 of the Criminal Code. Section 8 and 9 of the second forbearance agreement, the mechanisms for marketing and selling the additional collateral. And we think he was correct in concluding that we stood a substantial likelihood of success on the merits. First, the interpretation that was advanced by the appellants renders three material parts of Section 8 meaningless. The 9 to 10 sharing of the net proceeds, the ratable application of the proceeds, and the during standstill language that's contained in those sections. Second, the district court properly recognized that in view of that language, the appellant's suggestion that the mortgage could not be released except upon full payment of the entire outstanding indebtedness would render those provisions entirely meaningless. And finally, Judge Chang correctly concluded that to the extent that the appellants contend that the release of the liens of the additional collateral was within their discretion, their refusal to do so, at least with respect to the Keeler property, was a breach of the covenant of good faith and fair dealing imposed on all contracts. With respect to the aspect of the injunction that stopped the appellants from proceeding with respect to the foreclosures on the Georgia properties, we have submitted and Judge Chang agreed that the defaults that were the basis of those foreclosures were made under the second forbearance agreement. So the second forbearance agreement is really the document that controls. And because it is a default that was alleged under the term loan agreement and the second forbearance agreement that gave rise to the foreclosure action, Illinois law governs. It's that simple. But as we pointed out in our briefs, even if you accept what the appellants are saying, that under Georgia law you have to pay the entire outstanding indebtedness before you're entitled to injunctive relief, which is a drastic proposition we submit, the cases do not stand for that. The cases cited by the appellants in each of them, there is an underlying payment default. And at least that issue of default was not disputed or litigated. The cases we have cited, the Georgia Supreme Court has indicated that if there is a legitimate dispute with respect to the default that is alleged, preliminary injunctive relief is proper. And we submit that those cases control this particular factual situation, and for those reasons we ask that you affirm Judge Chang's decision. Thank you. Thank you, Mr. Sharkey. Anything further, Mr. Sullivan? Just to clarify, Your Honors, I don't know what evidence has been presented to the district court in the three years since this preliminary injunction was granted. Four depositions have been undertaken and some written discovery. No substantive motions have been filed. We're not at the trial stage. So no evidence. Nothing has changed in this case. And we're hamstrung, again, with a ruling that says if you have a forbearance agreement, you have to give a release on a mortgage, which doesn't make any sense. It's not how security instruments work. Regardless of this 90% to 10% split, there is also a duty of good faith and fair dealing on both sides in this relationship. You can't swear in a sworn financial statement that the property is worth $7.5 million and turn around and sell it for millions of dollars less soon thereafter. They had a duty of good faith and fair dealing. Why not? Estimating the value of real estate is very difficult, and markets go up, markets go down. Understood. But, again, this was a sworn financial statement. Yes. In other words, it's our best estimate as of today. Yes. But an estimate is an estimate, and a market is a market, and these things happen. And if you've read the judges, the district court's analysis of the appraisal at the time that was presented in the preliminary injunction, even that appraisal said this was not a market value. This was a foreclosure-type appraisal wherein the property, including the repairs that were needed, should have been valued at $1.2 million more than what the appraisal said. And it was a sale to a third party that was using it for an investment. So there's all these issues, Judge. So the duty of good faith is not just solely on behalf of the lender here. It's also on behalf of the borrower. So I just wanted to make that clarification. Thank you. Thank you very much. The case is taken under advisement.